**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CONNY B. HATCH III,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | A-10-CA-453  LY |
| | § | |
| **DEL VALLE INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Del Valle Independent School District's Motion for Summary Judgment, filed August 22, 2011 (Clerk's Dkt. #17); Plaintiff Conny B. Hatch III's Response to Defendant Del Valle Indpendent School District's Motion for Summary Judgment, filed September 2, 2011 (Clerk's Dkt. #19); Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, filed September 15, 2011 (Clerk's Dkt. #23); Plaintiff Conny B. Hatch III's Response to Defendant Del Valle Independent School District's Implicit Motion to Strike Plaintiff's Affidavit, filed September 26, 2011 (Clerk's Dkt. #26); Defendant's Reply to Plaintiff's Response to Defendant's Implicit Motion to Strike Plaintiff's Affidavit, filed September 30, 2011 (Clerk's Dkt. #27); and Plaintiff Conny B. Hatch III's Verification, filed October 3, 2011 (Clerk's Dkt. #30)..  The matters were referred by United States District Judge Lee Yeakel for a Report and Recommendation as to the merits of the matters pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for

the Western District of Texas.  After reviewing the parties' pleadings, relevant case law, as well as

the entire case file, the undersigned issues the following Report and Recommendation to the District

Court.

## I.  BACKGROUND

Plaintiff Conny B. Hatch III ("Hatch") is a former employee of the Del Valle Independent

School District ("DVISD").  He brings this action against sole defendant DVISD.  Plaintiff alleges

he was subject to discrimination based on race and gender, which resulted in less favorable treatment

and eventually the termination of his employment with DVISD.  Hatch also alleges he was subject

to retaliation during the course of his employment.  He alleges these employment practices violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

Defendant has now filed a motion for summary judgment.  Defendant contends: (1) Plaintiff

cannot demonstrate a causal connection to support his claim of retaliatory termination; (2) Plaintiff

cannot establish the failure to hire/promote him was the result of discrimination or retaliation;

(3) Plaintiff cannot establish his claims of disparate treatment; and (4) Plaintiff cannot establish his

claim of termination based on discrimination.  The parties have filed responsive pleadings and the

matter is now ripe for determination.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only

"if the movant shows there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (1993). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### III. EVIDENTIARY OBJECTIONS

Defendant objects to portions of the summary judgment evidence presented by Plaintiff.[1] Specifically, Defendant first objects to the portions of Plaintiff's affidavit which contradict his

---

[1] Defendant also objects generally to the unsupported factual allegations contained in the body of Plaintiff's response to the summary judgment motion. Unquestionably, "[c]onclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). Accordingly, the undersigned has restricted consideration only to those facts evidenced by competent summary judgment proof.

deposition testimony.  A party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996).  *See also Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (nonmoving party may not manufacture factual dispute merely to defeat motion for summary judgment by submitting affidavit that impeaches prior testimony without explanation); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (party's self-serving and unsupported statement in affidavit will not defeat summary judgment where the evidence in record is to the contrary).  The undersigned will thus not consider those portions of the affidavit which Defendant can establish are contrary to Plaintiff's deposition testimony.  *See Taylor v. Coastal Secs., Ltd.*, 45 F. App'x 326 (5th Cir. 2002) (district court did not err in striking portions of affidavit that were inconsistent with deposition testimony).

Defendant also specifically objects to Paragraph 9 of Plaintiff's affidavit.  According to DVISD, the final sentence in that paragraph should be stricken because the document to which it refers speaks for itself.  The sentence at issue refers to a February 2009 memorandum.  In the affidavit Hatch states "Furthermore, it prohibited me to take it to either the HR or the School Board or Superintendent by not directing me to address any concerns I may have 'with the administrators of the DAEP campus only.'"  (Plf. Resp. Ex. A ("Hatch Aff.") ¶ 9).  Hatch contends the statement should not be stricken because it should be read as his understanding of the memorandum.  The Court agrees, and will consider the statement as Hatch's understanding.

Defendant also objects to Paragraph 12 and the last sentence of Paragraph 13 of Hatch's affidavit.  Defendant maintains those portions of the affidavit are not based on personal knowledge, but are simply speculative statements by Hatch.  Hatch responds that in those paragraphs "I simply

4

state what I read in Arenas' hard [sic] written statement and drew the conclusions one may reasonably draw from these statements." (Hatch Resp. to Implicit Mot. to Strike at 4). In essence, Hatch admits his statements are his conclusions concerning the actions of others. The undersigned will consider those statements in that light.

Defendant finally objects to Plaintiff's Exhibit E on the ground it is unauthenticated. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991) (documents submitted as summary judgment evidence must be authenticated). However, as Hatch points out, the document in question is clearly marked as having been produced by Defendant during discovery. Under the Local Rules "[a] party's production of a document in response to written discovery authenticates the document for use against that party in any pretrial proceeding or at trial" Local Court Rules Rule CV-26(d).[2] Accordingly, the undersigned finds Defendant's objection unfounded.

## IV. SUMMARY JUDGMENT EVIDENCE

Plaintiff began his employment with DVISD as a substitute teaching assistant at the disciplinary alternative education program ("DAEP") in late 2007. (Def. Mot. for Summ. Jt. Ex. 1 ("Summer Aff.") ¶ 4; Plf. Resp. Ex. A ("Hatch Aff.") ¶¶ 3-4; Ex. L ("Hatch Depo. I") at 17-18). He was hired to work as a teaching assistant for the 2008-09 school year. (Summer Aff. ¶ 6; Hatch Depo. I at 20-23). At the time he was hired by DVISD, Hatch had not completed his college degree. He obtained his degree in December 2008. (Hatch Aff. ¶ 4). Hatch expressed his interest in seeking teacher certification, once he had obtained his college degree, during his initial hiring in October

---

[2]As discussed further below, Hatch's attempted use of this exhibit has other evidentiary flaws.

2007.  He was told to speak to the principal at the school to which he was assigned.  Specifically, Hatch was told about the BESST alternative certification program.  (*Id*. ¶ 3).[3]

In order to teach a core subject area, such as science or history, a person must be "highly qualified."  Highly qualified teachers must demonstrate, in addition to general certification requirements, competency in their core academic subject area.  New teachers must demonstrate competency by both passing the applicable content exam and having twenty four semester hours, with twelve of those hours being upper-division courses, in the core academic subject areas in which they teach.  (Summer Aff. ¶¶ 11-12; Def. Mot. for Summ. Jt. Ex. 28).

Admission to the BESST program involved an initial determination by the potential employer as to whether the applicant met the criteria of twenty four hours in a specific content area.  If not, the applicant was required to meet with a regional representative to determine an approved content area.  (Summer Aff. ¶ 10).  The applicant would then apply for jobs with school districts that had openings in the approved content area, and submit an application to the regional BESST program, including transcripts and three professional references.  The school district, regional office and applicant would work together during the final steps of the qualification process.  (*Id.).*

Holly Tarter ("Tarter") was the principal at DAEP during the 2007-08 and 2008-09 school years.  (Def. Mot. for Summ. Jt. Ex. 3 ("Tarter Aff.") ¶ 2).[4]  Mario Palacios ("Palacios") was an assistant principal reporting to Tarter at DAEP during those school years.  (Def. Mot. for Summ. Jt.

---

[3]If an application to an alternative certification program is accepted, the prospective teacher may be able to obtain a probationary certificate that allows the person to become a teacher of record in the classroom pending completion of the program.  (Summer Aff. ¶ 9).

[4]As detailed in separate orders, the original affidavit submitted by Defendant was stricken. Defendant has since filed an amended affidavit.  For convenience, the undersigned will refer to the amended affidavit as Exhibit 3 of Defendant's summary judgment motion.

Ex. 5 ("Palacios Aff.") ¶ 2).  Marlyse Summer ("Summer") was the Executive Director of Human

Resources for DVISD.  (Def. Mot. for Summ. Jt. Ex. 1 ("Summer Aff.") ¶ 2).

According to Tarter and Palacios, during the 2008-09 school year they began noticing Hatch

was not meeting expectations.  They state he was not actively monitoring the students as directed

and not giving them proper redirection.  They both observed him wearing sunglasses over his eyes

in a classroom, a behavior he had been instructed not to engage in as it was inconsistent with student

supervision.  Both state they had not observed any other teacher or teaching assistant wearing

sunglasses in the classroom.  (Tarter Aff. ¶ 10; Palacios Aff. ¶ 3).  According to Palacios:

> We had told him that it was okay for him to wear sunglasses outside while moving
> between portables, but that he needed to take them off his eyes while in the
> classroom. . . . These activities are inconsistent with campus needs with regard to
> student supervision and classroom management expectations that create a safe and
> productive learning environment in a discipline alternative education setting.
>
> As a result of this behavior, on February 16, 2009, we gave Mr. Hatch a letter of
> reprimand.

(*Id*. ¶¶ 3-4) (paragraph numbers omitted).

A memorandum dated February 16, 2009, signed by Tarter on February 17, 2009, directed

to Hatch, set forth five "points of interest [which] need to be addressed and improved immediately."

(Def. Mot. for Summ. Jt. Ex. 7).  The points identified are:

1.    Consistent monitoring of students.
2.    Redirection of student behavior
3.    Standing and moving around the room
4.    No sitting or wearing shades in the classroom
5.    Anticipation of bad student behavior and actions.

(*Id*.).  The memorandum further states "[y]ou are receiving a directive to not communicate with your

colleagues about these list [sic] expectations or concerns."  (*Id*.).

7

According to Palacios, the memorandum "was intended to require [Hatch] to maintain body position to be aware of student behavior in order to react appropriately to maintain a safe learning environment for the students." (Palacios Aff. ¶ 4).   Tarter explains "[s]itting in the classroom was not consistent with proper monitoring of students," but she "intended for this document to still allow him to sit when he was not in direct supervision of students." (Tarter Aff. ¶ 11).   Palacios testified he "was not aware of anybody not being able to sit down, but we do ask that they actively monitor for most of the day, which includes not sitting, but not at all times." (Plf. Resp. Ex. M ("Palacios Depo.") at 33).

Hatch testified he refused to sign the memorandum because he believed it was racially biased, and told both Tarter and Palacios of his belief.   He further testified, although he saw other teaching assistants wearing shades in the classroom, he does not know if Tarter or Palacios ever witnessed that behavior or whether others were subject to any discipline for that behavior.   (Def. Mot. for Summ. Jt. Ex. 2A ("Hatch Depo. III") at 261-63; Hatch Aff. ¶¶ 8-9).   Hatch also testified he specifically objected to the fourth point requiring no sitting in the classroom.   According to Hatch, "at any given time you can go into any classroom and see my coworkers, or similarly situated coworkers sitting in the classroom." (Hatch Depo. I at 37-38).   Hatch testified other teaching assistants, who he identified as white females, were all permitted to sit on the job.   (*Id*. at 41-42)

On March 2, 2009, Hatch signed the memorandum., but also included hand-written comments on the "infractions" set forth in the memorandum.   Although Hatch noted sitting in the classroom at DAEP was "common," he also wrote "I will take note of these points of interest." (Tarter Aff. ¶ 11; Palacios Aff. ¶ 4; Def. Mot. for Summ. Jt. Ex. 8).   According to Hatch, Tarter

ordered him to sign the memorandum and told him if he did not, he would lose his job.  (Hatch Aff. ¶ 10).  According to Tarter, Hatch's performance did not improve thereafter.  (Tarter Aff. ¶ 11).

Hatch states that after the March 2 encounter, he began applying for horizontal transfers to other DVISD campuses.  His applications were denied.  (Hatch Aff. ¶ 11).  He testified specifically he applied for vacant science and history positions at DAEP.  Although he did not have a teacher certificate, Hatch believed he was qualified for those positions because Tarter had led him to believe she would enter him in an alternative certification program.  However, he also testified he did not have a major or minor in any science.  (Def. Mot. for Summ. Jt. Ex. 2 ("Hatch Depo. II") at 145-47).  Moreover, it was incumbent on Hatch to apply to an alternative certification program.  (Summer Aff. ¶ 23).

A science teacher position at DAEP was vacated in March 2009.  The position was filled by Regan Dowdy ("Dowdy"), as a long-term substitute, from March 2009 through May 2009.  Substitute teachers are not required to be certified.  (Summer Aff. ¶¶ 13-14).  Dowdy, has a bachelor's degree with a major in biology and was already working as a science tutor at DAEP.  Tarter states she specifically asked Dowdy, based on Dowdy's science background, whether she wished to change status to substitute to obtain the temporary position.  (Summer Aff. ¶ 14; Tarter Aff. ¶ 25).

The science teacher position was posted for the next school year on April 20, 2009.  The person filling the position was required to be a certified teacher and highly qualified in the content area of science.  Dowdy applied for the position on April 30.  Because she did not have a teaching certificate, Dowdy also applied for acceptance into the BESST program.  (Summer Aff. ¶¶ 15-16).  Tarter states:

> As part of being accepted into an alternative teacher certification program I recommended that Ms. Dowdy be hired to fill the science teacher position for the next school year. Ms. Dowdy received her probationary certification in August 2008, and she began work as a professional classroom teacher thereafter. Even if Mr. Hatch had had a teaching certificate, he would not have been qualified for this position because he did not have the background in the content area of science. At any rate, I would have hired Ms. Dowdy over Mr. Hatch because I had not had the same kinds of performance issues with her as I did with Mr. Hatch.

(Tarter Aff. ¶ 25). Summer confirms Dowdy was recommended for the science position on May 1, and that the BESST program was willing to sponsor her. According to Summer, Dowdy "completed the initial phase of [the BESST] program on June 23, 2009, and she had demonstrated the proficiency to teach science by July 2009" allowing DVISD to hire her as a classroom teacher. (Summer Aff. ¶ 16).

There is no record of Hatch applying for a social studies teacher position as DVISD. (*Id.* ¶ 19). Hatch did not apply for the science teacher position until May 6, 2009. He withdrew his application on May 19, 2009. (*Id.* ¶ 20). According to Summer, Hatch's college transcript reflects he did not have the required hours in science to qualify for the science teacher position. Nor did he ever enroll in an alternative teaching certification program. (*Id.* ¶¶ 22-23).

Palacios received a complaint from DAEP teacher Nicole Arenas ("Arenas") around May 1, 2009. According to Palacios:

> Arenas reported that she left Mr. Hatch to supervise students while she left the room during lunch. Later, Ms. Arenas returned to the room to find several boys standing up and paint was on the floor and on their shirts. She observed that Mr. Hatch was sitting and she questioned him about what had happened. The students laughed. After receiving this complaint from Ms. Arenas, I spoke to the students in that classroom. According to them, Mr. Hatch was wearing sunglasses over his eyes and they believed he was asleep while they engaged in a paint fight. Based on these reports from Ms. Arenas and the students, I believed that Mr. Hatch had relinquished control of the classroom and allowed students to engage in a paint fight, and I shared that with Ms. Tarter.

(Palacios Aff. ¶ 5).[5]   Tarter states DAEP procedures provide when a teacher leaves the room, students are to return to their cubicles, and she understood this procedure was not followed.  (Tarter Aff. ¶ 12).  Tarter instructed Palacios to discuss the incident in an official meeting with Hatch. Tarter states:

> Based on reports from Ms. Arenas and Mr. Palacios, as well as the previous issues I had observed with Mr. Hatch, I believed that Mr. Hatch had relinquished control of the classroom and essentially allowed the students to engage in a paint fight.
>
> I believe that Mr. Hatch allowed himself to be in a position for discipline infraction to occur, which jeopardized the safe learning environment and led to his lack of classroom supervision and management.  This allowed the students to engage in a paint fight.  This conduct by Mr. Hatch caused him to be in violation of the classroom management rules and supervision procedures of DAEP.

(*Id*. ¶¶ 13-14) (paragraph numbers omitted).

Palacios prepared a memorandum to give Hatch, dated May 6, 2009.  The memorandum directed Hatch to "{r]ecognize and monitor student behavior and discipline issues" to "not wear sunglasses in the classroom at any time" and to "not eat in front of students in the classroom at any time."  (Def. Mot. for Summ. Jt. Ex. 10).  Palacios states "I had previously observed Mr. Hatch sitting, eating pizza, and playing dominoes during a transition period when he should not have been doing so." (Palacios Aff. ¶ 8).  Hatch refused to sign the memorandum.  (*Id.*; Tarter Aff. ¶ 15; Hatch Aff. ¶ 13).

Tarter states that at about the same time, she determined she would not offer Hatch a position as a teacher assistant at DAEP for the following year.  (Tarter Aff. ¶ 16).  Palacios and Tarter met with Hatch on May 7, 2009.  Tarter told Hatch he was going to be given the opportunity to resign

---

[5]Hatch contends the incident in Arenas' classroom was fabricated.  As discussed below, Hatch has failed to present any competent summary judgment evidence supporting his contention.

by submitting a resignation letter rather than be terminated.  (Tarter Aff. ¶ 16; Palacios Aff. ¶ 7; Hatch Aff. ¶ 13).   Tarter states, although Hatch was "not a fit for future DAEP positions," she encouraged him to pursue his career options.  (Tarter Aff. ¶ 17).  She gave him information about an alternative certification program and current job fair dates on May 8, 2009.  Tarter also asked Hatch whether he would be providing a letter of resignation.  Hatch told Tarter "to do what [she] needed to do."  (*Id.*).

On May 8, 2009, Hatch filed a Level 1 Grievance.  (Hatch Aff. ¶ 13).  Tarter prepared an email response detailing her version of the events.  She sent the response to Summer.  (Tarter Aff. ¶18; Def. Mot. for Summ. Jt. Ex. 12).  Tarter further states:

> I gave Mr. Hatch his annual evaluation on May 19, 2009, after the decision to terminate him.  Although he received an overall rating of meeting expectations, I made specific comments about some of the areas of concern.  Specifically, under the category of Quality of Work, I mentioned transitions, not standing in one area of the classroom, and needing to improve on not wearing shades in the classroom. These are the areas that had caused me to decide not to continue to employ him for the next school year.

 (Tarter Aff. ¶ 19).

According to Tarter, Arenas reported to her on May 26, 2009 that Hatch had initiated communication with a disgruntled parent of one of her students.  Arenas further reported Hatch had removed the parent from her classroom to attend an unsupervised parent-student conference without supervision of DAEP administrators.  Tarter states it "was not a common practice for the teaching assistants to have student-parent conference without the DAEP Administrators."  (*Id.* ¶ 20).  Tarter states:

> On May 27, at 10:15 a.m., I gave Mr. Hatch a memorandum containing additional specific directives, including to: communicate only with administration regarding the concerns about his job performance; not conduct unsupervised parent or student

meetings; not supervise Ms. Arenas's classroom, and to perform teaching assistant supervision only in the high school area.

(*Id*. ¶ 22).   Tarter states she advised Human Resources she would not have a position for Hatch as a teaching assistant at DAEP during the 2009-10 school year.   (*Id* ¶ 24).

## V.  APPLICABLE LAW

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, [age] or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability based on alleged disparate treatment depends on whether the protected trait "actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706 (1993)).  That is, the plaintiff's race and/or gender, must have "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.*

Plaintiff may prove the requisite intentional discrimination using either direct or indirect evidence.  Intentional discrimination can be established through either direct or indirect evidence. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (gender discrimination); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (racial disrcrimination).  Direct evidence of discrimination is evidence that proves the defendant acted with discriminatory intent, without the need for inference or presumption.  *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).  If direct evidence is unavailable, as is typically the case, the plaintiff may create an inference of discrimination by using the burden-shifting framework enunciated in

13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

In order to create an inference of discrimination, the plaintiff must first establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999). Such a prima facie case is established by evidence that: (I) the plaintiff is a member of a protected class; (ii) she was qualified for the position that she held; (iii) she was fired or suffered other adverse employment action; and (iv) she suffered from disparate treatment because of membership in the protected class. *See Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005) (gender discrimination); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (racial discrimination).

The prima facie case, once established, raises a presumption of discrimination which the defendant may rebut by articulating legitimate, nondiscriminatory reasons for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Shackleford*, 190 F.3d at 404. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 1094-95 (1981). Third, if the employer carries this burden of production, the presumption of discrimination created by the plaintiff's prima facie case "drops out of the picture" and the burden shifts back to the plaintiff to establish intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 2749 (1993). The plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic

14

(mixed-motive alternative). *Rachid v. Jack in the Box, Inc.*, 376 F3d 305 311-12 (5th Cir. 2004). Thus, to survive summary judgment, the plaintiff must raise a fact issue as to whether the employer's proffered reason was either mere pretext for discrimination or only one motivating factor. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

To establish a claim of retaliation under Title VII, a plaintiff must demonstrate: (1) she engaged in activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011); *Fabela v. Socorro Indep. Sch. Dist*., 329 F.3d 409, 414 (5th Cir. 2003).   If the employee can demonstrate this prima facie case of retaliation, the *McDonnell Douglas* burden-shifting framework applies  and the employer has the burden to state a legitimate non-retaliatory reason for the employment action. *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 348 (5th Cir. 2007).  Once the employer does so, the burden falls to the employee to show the explanation is a pretext for unlawful retaliation. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).[6]

---

[6]The undersigned notes this *McDonnell Douglas* burden-shifting framework is applicable to retaliation claims in which the Plaintiff argues the reasons offered by the employer for the adverse employment action are merely pretextual. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, at 805 (5th Cir. 2007) (applying *McDonnell Douglas* framework because plaintiff's retaliation claims are based on a pretext theory); *Fabela.*, 329 F.3d at 415 (noting *McDonnell Douglas* framework does not apply where plaintiff is able to support element of retaliation claim with direct evidence of discrimination).  Although Plaintiff is not precisely clear, it appears he is proceeding under a pretext theory, rather than proffering direct evidence of retaliation.

## VI.  ANALYSIS

**A.      February 2009 Disciplinary Memorandum**[7]

Plaintiff alleges in his complaint that disciplinary actions taken by DVISD in February 2009 were the result of illegal discrimination.[8]  Defendant argues such a claim must fail because Plaintiff cannot show the adverse employment action required to establish a discrimination claim under Title VII.

The Fifth Circuit has strictly interpreted the adverse employment element of a prima facie discrimination case, holding an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  *See also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (noting precedent recognizing only ultimate employment decisions as actionable in Title VII discrimination action)..  Rather, an adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating."  *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002).

Plaintiff has alleged, as a result of Defendant's February 2009 act, he was not allowed to sit in the classroom, was banned from certain areas of campus and was not allowed to meet with parents

---

[7]The precise nature of the claims made by Hatch are somewhat difficult to discern.  The allegations in Plaintiff's complaint and the arguments he sets forth in his response to the summary judgment motion are not completely consistent.  In an abundance of caution, the undersigned will address the broadest interpretation of Hatch's claims.

[8]To the degree Plaintiff is alleging the February 2009 memo was the result of retaliation for complaints of racial discrimination, the claim must fail.  The first mention Plaintiff makes of a complaint of racial discrimination is his response to the February 2009 memorandum.  The memorandum cannot therefore, be viewed as retaliation for that complaint..

or students.  (Plf. Compl. at 6).  The summary judgment evidence he presents is limited to his allegation that he was not allowed to sit in the classroom after the February 2009 memorandum. However, as set forth above, the summary judgment evidence falls short of establishing he was subjected to such a limitation after February 2009.  Rather, the evidence shows the intent of the February 2009 memorandum was to instruct Hatch to more actively supervise students.  Moreover, and more significantly, the evidence does not show the actions taken by Defendant in February 2009 affected Hatch's pay, duties or benefits.  Thus, those actions cannot establish an essential part of his prima facie case under Title VII.  *See Pegram*, 361 F.3d at 283 (where evidence produces no objective showing of loss in compensation, duties, or benefits, evidence is insufficient to establish adverse employment action).  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim of discriminatory discipline in February 2009.

## B.    Gender Discrimination

Hatch also alleges he was subject to disparate treatment in obtaining alternate teacher certification based on his gender.  He contends he was treated less favorably than Dowdy, a white female.[9]  Hatch alleges Dowdy was promoted to a classroom teaching position and was paid more than he was.  Defendant maintains Hatch can neither establish a prima facie case of discrimination nor rebut DVISD's legitimate non-discriminatory reasons for any differential treatment.

As to the prima facie case, Defendant contends Hatch has not shown he was qualified for the classroom teaching position given to Dowdy.  Specifically, as set forth above, Defendant has

---

[9]Plaintiff also alleges in his complaint that there were an additional five similarly situated white females who received more pay and better treatment than he did.  However, he does not identify those individuals, nor does he present any summary judgment evidence or argument regarding differential treatment other than that related to Dowdy.

provided competent summary judgment evidence establishing a science teacher must have specific coursework in the science area, and Hatch's transcript does not reflect the requisite coursework. Hatch has not presented any contravening evidence.  Accordingly, the undersigned concludes Hatch has failed to show he was qualified for the science teaching position  and has thus failed to establish a prima facie case of discrimination.

Further, Defendant has presented summary judgment evidence establishing Dowdy was selected for the science teacher position because she had obtained a degree in biology, had applied for and been accepted in the BESST alternative certification program, and completed that program. Hatch has presented no contravening evidence, and further has presented no evidence establishing he possessed qualifications equal or superior to Dowdy's.  Accordingly, Defendant has established there were legitimate, non-discriminatory reasons for any differential treatment concerning Dowdy's promotion and Hatch has not challenged those reasons as inadequate or pretextual.  He has, thus, not carried his burden to defeat summary judgment as to his claim of gender discrimination in promotion.

Hatch's claim of differential pay fails for much the same reason.  As set forth above, Hatch was employed as a substitute teaching assistant in 2007-08 and was employed as a full time teaching assistant in 2008-09.  Dowdy was promoted to substitute classroom teacher during the 2008-09 school year.  (Summer Aff. ¶¶ 4, 6 & 25).  According to Summer:

> During 2008 - 2009, the substitute pay was restructured in order to be competitive with surrounding districts pay and to attract substitutes to the Del Valle district. Both Mr. Hatch and Ms. Dowdy were paid standard substitute pay according to their assignment and level of education, for the time that they were employed as substitutes, respectively.  Hatch began his substitute role for 2007-08 making $65 per day with no degree.  Based on the long term nature of the substituting, his rate was raised to $75 per day as of April 4, 2008.  As of July 7, 2008, Mr. Hatch's pay was raised to $85 per day.  Ms. Dowdy began her substitute role under the new system

being paid $85 per day with a degree.  Based on the long term nature of her substituting, her rate was raised to $95 per day as of the June 15, 2009 pay date.

(*Id*. ¶ 25).  Hatch presents no contravening evidence.

Based on the undisputed summary judgment evidence, Hatch and Dowdy were both paid $85 per day as substitutes with a degree during the 2008-09 school year.  Dowdy's pay was increased after Hatch's employment was terminated, based on the long term nature of her position.. Accordingly, Hatch has failed to establish he was subject to differential treatment based on his gender.  Defendant should be granted summary judgment as to this claim.

**C.      Retaliation**

Hatch next complains he was accused of workplace infractions in May 2009 and his employment was terminated in retaliation for reporting discrimination in the work place.  He contends Tarter was retaliating against him for his complaint that the February 2009 disciplinary memorandum was racially founded.  Defendant contends Plaintiff's claim fails because he cannot establish the requisite prima facie case because he has no evidence showing a causal connection between his complaint of racial bias in February 2009 and the actions of May 2009.  Defendant further contends that even if Plaintiff has stated a prima facie case of retaliation, DVISD has established a legitimate, non-discriminatory reason for the actions of May 2009 and Hatch has not presented any evidence to the contrary.

The factual basis Hatch believes evidences his claim of retaliation is not clear.  Although the time lapse between the February discipline and May employment termination is not lengthy, the Supreme Court has noted the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality "uniformly hold" that the temporal proximity must be "very close."  *Clark County Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 273-274, 121 S. Ct. 1508, 1511 (2001).  Specifically, the cases cited by the Supreme Court found a three and four month gap between the protected activity and the adverse action insufficient.  *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)).  The Fifth Circuit has similarly concluded periods of six or seven months between the protected activity and adverse action are too great to alone create a fact issue concerning causality.  *See Bell v. Bank of Am.*, 171 F. A'ppx 442, 444 (5th Cir. 2006) (seven month gap); *Foster v. Solvay Pharmaceuticals, Inc.*, 160 F. A'ppx 385, 389 (5th Cir. 2005) (six month gap); *Myers v. Crestone Int'l, LLC*, 121 F. A'ppx 25, 28 (5th Cir. 2005) (three month gap); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five month gap).  Thus, temporal proximity alone is not sufficient in this case to establish causality.

Hatch attempts to rebut the evidence concerning DVISD's legitimate non-discriminatory reasons for the actions taken in May 2009 by suggesting the DVISD employees involved fabricated "phony" allegations and infractions.  Hatch first cites the deposition testimony of Palacios in support of this argument.  Specifically, Hatch contends Palacios testified, although he signed the May 6, 2009 memorandum, he could not identify some of the listed infractions as actual infractions.  Hatch further contends, during his deposition, Palacios "invented" a May 4 meeting with Hatch.  Finally, Hatch maintains inconsistencies in Arenas' written statement about the May 1, 2009 paint incident and Summers' related testimony establish Tarter induced Arenas into fabricating the incident.

Hatch's argument that the "fabrications" of DVISD employees evidences retaliation against him by Tarter fails for several reasons.  First,. Palacios' deposition testimony concerning the May 4 meeting with Hatch is contradicted solely by Hatch's affidavit testimony in which Hatch states

20

Palacios did not give him a verbal reprimand on May 4, 2009.  (Palacios Depo. at 28-34; Hatch Aff. ¶ 13).  This suggests at best simply a disputed fact issue as to what occurred on May 4.[10]

Further, the undersigned disagrees with Hatch's characterization of Palacios' deposition testimony concerning the May 6, 2009 memorandum.  Palacios testified the nine matters listed in the memorandum were all matters in which he had observed Hatch falling short of DAEP policies and practices.  (Palacios Depo. at 28-34).  The testimony does not cast doubt on the validity of Palacios' belief that Hatch's performance fell short of expectations and thus does not evidence fabrication on the part of Palacios.

Nor does the undersigned agree with Hatch concerning Arenas' written statement, which he contends is attached as Exhibit E to his response to the motion for summary judgment.  As noted above, the exhibit is authenticated by virtue of Defendant's production of the document during discovery.  However, Hatch has not presented any testimony or evidence which establishes the exhibit is a true and correct copy of the statement written by Arenas.  Nor has he presented any testimony from Arenas as to the truth of the matters asserted therein.

Further, the inconsistencies alleged by Hatch in Exhibit E fall short of establishing fabrication.  He contends the fact that the statement indicates the paint incident occurred on May 7, rather than May 1, establishes fabrication.  The undersigned disagrees.  First, Hatch has not presented any evidence showing that was Arenas' motive.  Moreover, the date, noted in the first line of the statement could just as easily be a mistake or reflect the date the statement was written.  Hatch also contends the insertion of the word "sitting" in the margin indicates Arenas was forced to alter her

---

[10]Nor has Hatch shown the relevance of whether or not a verbal reprimand was provided to him on May 4 to the issue of retaliation.

version of the events by others.  Again, he has failed to present any evidence establishing this version of the event or the statement.

Hatch also contends Summers' deposition testimony casts the statement into question. According to Hatch, Summers testified the statement included references to his wearing sunglasses in the classroom, but the statement does not include such a reference.  Hatch maintains this further evidences the statement's falsity.  However, contrary to Hatch's characterization, Summers testified she did not base her knowledge of the paint incident solely on Arenas' statement.  (Summers Depo. at 85-87).

Finally, even if Hatch had presented evidence suggesting the allegations were fabricated, he has not presented any objective evidence suggesting the motive behind the fabrication was retaliation on the part of Tarter for Hatch's suggestion of racial bias concerning the February 2009 disciplinary memorandum.  Rather, Hatch simply asserts his perceived unfairness as to his treatment and his resulting conclusion that the underlying motivation must be retaliation.  (Hatch Aff. ¶¶ 12-13).  A subjective belief alone is insufficient to carry his burden to defeat Defendant's summary judgment motion.  *See Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (employer's subjective belief of discrimination alone is not sufficient to warrant judicial relief); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (plaintiff cannot merely rely on subjective belief that discrimination occurred).  *See also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (simply disputing underlying facts of employer's decision not sufficient to create issue of pretext); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (merely disputing employer's assessment of employee's performance will not create issue of fact).

In contrast, Defendant has presented evidence as to the reasons for the May 2009 actions, namely the performance of Plaintiff in DAEP and the paint incident in Arenas' classroom.  Hatch's speculative assertion as to Defendant's motives is insufficient to satisfy his burden to rebut the reasons proffered for his treatment and eventual termination of his employment.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (even incorrect belief that employee's performance is inadequate constitutes legitimate, nondiscriminatory reason for decision, question is not whether decision is erroneous, but whether decision was made with discriminatory intent). *See also Grimes*, 102 F.3d at 140 ("In response to motions for summary judgment, it is therefore incumbent upon the non-moving party to present evidence-not just conjecture and speculation-that the defendant retaliated and discriminated against plaintiff").  The undersigned thus concludes Plaintiff has failed to either rebut Defendant's legitimate nondiscriminatory reason for the actions of May 2009 or to establish a causal connection between his protected activity and those actions. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (mere fact that some adverse action is taken after employee engages in protected activity is not alone enough to establish retaliation).  Accordingly, Defendant is entitled to summary judgment as to this portion of Plaintiff's claims.  *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (noting court has "consistently held" where defendant has proffered nondiscriminatory purpose for adverse employment action, plaintiff in retaliation case has burden of proving "but for" improper purpose adverse action would not have occurred).

D.     **Termination of Employment**

Defendant has also moved for summary judgment as to any claim by Hatch that the termination of his employment was the result of racial discrimination.  The parties do not disagree

23

that Hatch is African-American, was qualified for the position he held, and his employment was terminated.  Defendant maintains Plaintiff is not entitled to relief on this claim because DVISD has proffered a legitimate, nondiscriminatory reason for the termination of his employment.

As set forth above, DVISD has detailed performance issues observed by Tarter and Palacios which led them to believe Plaintiff's employment should be terminated.  In his affidavit, Hatch has presented only his own, subjective, belief as to the unfairness of his treatment.  As discussed above, his subjective belief alone is insufficient to carry his burden of rebutting Defendant's proffered reasons for the termination of his employment..

Hatch also suggests Tarter "set him up."  He argues he was the only DVISD classroom employee who was not permitted to sit down, to wear sunglasses or to eat in the classroom.  In support, he cites the testimony of Palacios wherein Palacios agreed other teachers were not banned from sitting in the classroom.  (Palacios Depo. at 32-33).  A full reading of the testimony, as detailed above, makes clear Palacios testified classroom personnel were required to actively monitor students by moving around the classroom, not sitting.  (*Id.*).  The termination of Hatch's employment was not the result of his sitting in the classroom, but his failure to meet DAEP standards, including properly monitoring the students in Arenas' classroom, which resulted in a paint fight.  (Tarter Aff. ¶¶ 13-14).

Hatch also alleged Tarter admitted he was set up when she commented he "took the bait offered by Ms. Arenas."  (Plf. Compl. ¶ 13).  Tarter explains:

> I believe that Mr. Hatch allowed himself to be in a position for discipline infractions to occur, which jeopardized the safe learning environment and led to his lack of classroom supervision and management.  This allowed the students to engage in a paint fight  This conduct by Mr. Hatch caused him to be in violation of the classroom management rules and supervision procedures of DAEP.  I stated to him that he should not have allowed the students to continue painting when Ms. Arenas had left the room, to which he responded that Ms. Arenas had only made a request that the students return to their desks and not given him a directive.  However, based on

24

> previous professional development and instruction given to the teaching assistants
> I anticipated that better supervisory and monitoring decisions for the safety of the
> students would have been implemented.  Instead, he used the teacher's failure to issue
> a directive as an excuse to allow the students to violate known procedures. His
> refusal to take responsibility for following procedure is what caused me to say that
> he "took the bait."  This statement by me was not an indication of any discriminatory
> or retaliatory animus

(Tarter Aff. ¶ 14).  Tarter's affidavit makes clear she believed Hatch "took the bait" when he was presented with an opportunity to make a poor choice concerning his supervision of students and he took it.  Her comment falls short of establishing her reason for terminating Hatch's employment was merely a pretext for discrimination.  As noted above, even if Tarter's belief concerning the paint incident and Hatch's performance was mistaken, it does not establish racial discrimination.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (where employer discharges employee based on complaint of another employee, issue is not truth or falsity of allegation, but whether employer reasonably believed employee's allegation and acted on it in good faith).  Hatch has not presented any evidence from which the Court could conclude the reason offered by DVISD for the termination of his employment was merely a pretext for racial discrimination..  *See Hernandez*, 641 F.3d at 131-32 (Title VII claim fails where plaintiff does not offer evidence that decision for termination was tainted by discriminatory animus).  Accordingly, Defendant should be granted summary judgment as to this claim.

**E.     Due Process**

Hatch asserts, for the first time, in his response to Defendant's summary judgment motion, that the termination of his employment violated due process.  He contends the changing of his job duties, the targeting of him as the "last (only) Black staffperson," the "phony allegations" against him, the fact that Palacios and Arenas were manipulated and encouraged to file false complaints

against him, the fact that the Human Resources department did not protect him from Tarter's abuse, the evaluation of his grievances by the perpetrators of abuse against him, the misleading information provided by the Human Resources department about his grievances, the blocking of Tarter's deposition by Defendant's attorneys and the fact that Tarter's affidavit was written by Defendant's attorneys amount to a violation of due process.  (Plf. Resp. at 12-13).

A response to a summary judgment motion that asserts a new claim is properly treated as a motion to amend.  *See Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996) (district court should have construed new claim asserted in response to motion for summary judgment as motion to amend).  An amendment at this stage requires leave of court, and the decision to permit or deny the amendment is reversible only for an abuse of discretion.  *Overseas Inns S.A.P.A. v. United* States, 911 F.2d 1146, 1150 (5th Cir. 1990).  In making this decision, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  However, the court must "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment."  *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999)

The undersigned concludes it would unduly prejudice DVISD if Hatch were allowed to amend his complaint at this late date.  The motion to amend, in the form of his summary judgment response, was obviously not filed until after DVISD moved for summary judgment.  It was also filed well after the April 20, 2011 deadline for filing amended pleadings established by the scheduling order in this case.  "To grant [Hatch] leave to amend is potentially to undermine [DVISD's] right

to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." *Overseas Inns*, 911 F.2d at 1151 (quoting district court's opinion). Accordingly, the undersigned will not address Plaintiff's late asserted due process claim.

## VII.  RECOMMENDATION

The undersigned magistrate jourt **RECOMMENDS** that the District Court **GRANT** Del Valle Indpendent School District's Motion for Summary Judgment (Clerk's Dkt. #17).

## VIII.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of December, 2011.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE